**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GLENN LUCERO, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CRASH CHAMPIONS, LLC,**<br><br>**Defendant.** | **Civil Action No. 1:26-cv-5476**<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Glenn Lucero ("Plaintiff"), through his undersigned counsel, individually, and on behalf of all other similarly situated persons, files this Collective and Class Action Complaint ("Complaint") against Defendant Crash Champions, LLC ("Defendant" or "Crash Champions"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22 *et seq*. for failure to pay overtime wages owed. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendant is incorporated in this District and conducts business in this District.

## PARTIES

1. Plaintiff Glenn Lucero is a resident of Albuquerque, New Mexico. Plaintiff was employed by Crash Champions as an Estimator or Service Advisor from approximately January 2020 to April 2025 in New Mexico. Pursuant to 29 U.S.C. § 216(b), Plaintiff Lucero has consented in writing to be a Plaintiff in this action. *See* Ex. A.

2. Defendant Crash Champions, LLC. ("Defendant" or "Crash Champions") is a limited liability company registered in Illinois with its principal place of business at 601 Oakmont Lane, Suite 400, Westmont, Illinois 60559.

3. The unlawful acts alleged in this Complaint were committed by Crash Champions and/or Crash Champions' officers, agents, employees, or representatives, while actively engaged in the management of Crash Champions' businesses or affairs and with the authorization of Crash Champions.

4. During all times relevant, Plaintiff was an employee of Crash Champions and was covered by the FLSA and New Mexico law.

5. During all times relevant, Crash Champions employed Plaintiff and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d)*; see also* 29 C.F.R. § 791.2(a), and New Mexico law, NMMWA. N.M. Stat. Ann. § 50-4-21(B).

6. During all times relevant, Crash Champions has been engaged in commerce or in the production of goods for commerce as defined by the FLSA.

7. Crash Champions' annual gross sales exceed $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

8. Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following proposed collectives:

> **FLSA Misclassification Collective:** All persons employed by Crash Champions in the United States as an Estimator (including Collision Estimator and Service Advisor or any substantially similar title) who were classified as exempt and paid on a salary basis between May 12, 2023 and January 6, 2025, and who worked more than forty (40) hours in at least one workweek.
>
> **FLSA Regular Rate Collective:** All non-exempt hourly employees who worked for Crash Champions in the United States and who received commissions and/or non-discretionary bonuses, during the three (3) years preceding the filing of this action through the present, and who worked more than forty (40) hours in at least one workweek.

9. Plaintiff brings Count II of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of himself and the following classes:

> **New Mexico Misclassification Class:** All persons employed by Crash Champions in New Mexico as an Estimator (including Collision Estimator and Service Advisor or any substantially similar title) who were classified as exempt and paid on a salary basis between May 12, 2023 and January 6, 2025, and who worked more than forty (40) hours in at least one workweek (the "
>
> **New Mexico Regular Rate Class:** All non-exempt hourly employees who worked for Crash Champions in New Mexico and who received commissions and/or non-discretionary bonuses, during the three (3) years preceding the filing of this action through the present, and who worked more than forty (40) hours in at least one workweek.

10. The FLSA Misclassification Collective and FLSA Regular Rate Collective are together referred to as the FLSA Collectives.

11. The New Mexico Misclassification Class and New Mexico Regular Rate Class are together referred to as the New Mexico Classes.

12. The FLSA Collectives and New Mexico Classes are together referred to as the Classes and members of the Classes as Class Members.

13. Plaintiff reserves the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTUAL BACKGROUND

14. Crash Champions is a national collision repair company headquartered in

Westmont, Illinois. Crash Champions operates hundreds of auto body repair facilities across the United States, including multiple locations in New Mexico, and employs thousands of workers nationwide.

15. Crash Champions markets itself as one of the nation's largest and fastest-growing collision repair companies and regularly works directly with automobile insurance carriers to prepare and process vehicle repair estimates and claims.

16. Plaintiff Glenn Lucero worked for Defendant from approximately January 2020 through April 2025 in New Mexico.

17. Throughout his employment, Plaintiff worked as an Estimator, also referred to as a Collision Estimator or Service Advisor, a core non-managerial position within Defendant's shop operations.

**Estimators Were Misclassified**

18. Estimators are responsible for inspecting damaged vehicles; preparing preliminary, supplemental, and final repair estimates; documenting damage using estimating software; coordinating with body technicians; managing repair files; and communicating with insurance carriers and customers regarding repair status, procedures, and insurance requirements.

19. Estimators also regularly educate customers regarding insurance procedures and repair processes, maintain repair files in compliance with insurer requirements, and ensure estimates follow Defendant's standardized policies, quality standards, and production expectations.

20. At all relevant times, Plaintiff and similarly situated Estimators were non-managerial production employees whose work was central to Defendant's collision repair operations.

21. Estimators' work did not involve management of the business, formulation of company policy, nor the exercise of independent discretion on matters of significance.

22. At all times relevant herein, Defendant maintained companywide, uniform compensation and classification practices that resulted in Plaintiff and similarly situated Estimators not receiving all overtime compensation required by federal and New Mexico law.

23. Throughout his employment, Plaintiff routinely worked more than forty (40) hours in a workweek. He typically worked five (5) days per week at approximately nine (9) hours per day, totaling approximately forty-five (45) hours per week.

24. From December 2020 to January 2025, Defendant classified Plaintiff and other similarly situated Estimators as exempt, salaried employees under the FLSA.

25. During this period, Plaintiff was paid an annual salary of approximately $75,000 and received additional compensation, including a weekly sales-based bonus equal to approximately 11% of gross profit. Despite regularly working more than forty (40) hours per workweek, Plaintiff did not receive overtime compensation.

26. Plaintiff performed no job duties that qualified him for any exemption under the FLSA or applicable New Mexico wage laws. Plaintiff did not manage the enterprise or any department thereof; did not regularly direct the work of two or more employees; and had no authority to hire, fire, discipline, or set compensation for other employees.

27. Plaintiff did not formulate business policy, carry out major assignments affecting business operations, or exercise authority over matters of significance independent of established policies or insurer requirements.

28. Plaintiff's work was routine, standardized, production-focused, and governed by Defendant's established procedures, estimating software, insurer requirements, and management oversight.

29. Despite Plaintiff's non-exempt duties and his regular performance of work in excess of forty (40) hours per workweek, Defendant failed to pay Plaintiff and similarly situated Estimators overtime compensation at one and one-half times their regular rate of pay.

30. Beginning in or around January 2025, Defendant reclassified Plaintiff and other similarly situated Estimators from salaried employees to hourly, non-exempt employees pursuant to a nationwide change in compensation practices. Plaintiff's job duties, workload, and responsibilities did not meaningfully change as a result of this reclassification.

31. Under its prior policy of classifying Estimators as exempt, Defendant failed to pay overtime wages to Plaintiff and similarly situated Estimators through at least December 2024. Upon reclassification, Defendant did not provide retroactive overtime compensation or back pay for overtime unlawfully withheld during the period of misclassification.

32. On or around January 2025, Plaintiff was paid an hourly base rate of approximately $32.00 per hour and earned additional non-discretionary compensation, including sales-based commissions, a monthly "stay bonus" of $2,000 (also referred to as a "transition" bonus), calibration-related bonuses, and other incentive-based compensation tied to productivity and performance.

**<u>Defendant Miscalculated Overtime Compensation</u>**

33. Although Plaintiff received overtime pay for hours worked over forty (40) per week after reclassification, Defendant failed to properly calculate Plaintiff's overtime rate because it did not include all non-discretionary bonuses and incentive compensation in the regular rate of pay, as

required by federal and state law. Plaintiff observed other Regular Rate Class and Collective Members whose overtime rates were similarly improperly calculated.

34. Under the FLSA, non-discretionary bonuses generally must be included in an employee's regular rate of pay for purposes of calculating overtime, unless a specific statutory exclusion applies. According to the U.S. Department of Labor, which is charged with overseeing implementation of the FLSA, "[e]xamples of nondiscretionary bonuses that must be included in the regular rate" of pay for purposes of calculating and paying overtime compensation include:

- Bonuses based on a predetermined formula, such as individual or group production bonuses;
- Bonuses for quality and accuracy of work;
- Bonuses announced to employees to induce them to work more efficiently;
- Attendance bonuses; and
- Safety bonuses (*i.e.*, number of days without safety incidents).

U.S. Dept. of Labor, Wage & Hour Div., *Fact Sheet #56C: Bonuses under the Fair Labor Standards Act (FLSA)*.

35. Here, Defendant failed to include "ATE" and "Transition" bonuses when calculating the regular rate of pay for Plaintiff and members of the FLSA Regular Rate Collective and New Mexico Regular Rate Class.

36. The ATE bonus was a sales-based bonus calculated using a predetermined formula: Plaintiff was eligible to receive (a) set percentage of all monthly sales above $170,000 if the location's Net Promoter Score ("NPS") exceeded 88%; or (b) a lower set percentage of all monthly sales above $170,000 if the location's NPS was 88% or below. NPS is a standardized customer

satisfaction metric derived from customer survey responses.

37. The "Transition Bonus" was a standard retention payment of $2,000 per month offered to Plaintiff and Regular Rate Class and Collective Members so long as they remained employed and continued working at Defendant's location.

38. These bonuses were non-discretionary because they were: (i) announced and promised in advance based on predetermined amounts or formulas; (ii) communicated through management; (iii) paid alongside employees' regular wages and treated as compensation rather than discretionary gratuities; (iv) intended to induce employees to accept employment and/or remain employed and work as scheduled; and (v) earned so long as employees satisfied clearly defined eligibility requirements set forth in Defendant's policies.

39. According to Defendant's job postings, non-discretionary bonuses are provided to Estimators, Customer Service Representatives, Paint Preppers, Technicians, Parts Assistants, Accounts Payable Specialists, and Associate Service Advisors.

40. Notwithstanding these facts, Defendant excluded such bonuses from the regular rate in the workweeks or periods in which the bonuses were earned, resulting in unpaid overtime premiums owed to Plaintiff and members of the FLSA Regular Rate Collective and New Mexico Regular Rate Class.

**Defendant Willfully Violated the FLSA**

41. Defendant's actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

42. Even though the FLSA requires overtime premium compensation for all hours worked over forty (40) hours per week, Defendant did not pay Plaintiff and Collective Members the proper overtime premiums for all overtime hours worked.

43. Defendant's violations were willful. Defendant is a sophisticated, nationwide employer with a centralized Human Resources and payroll infrastructure and knew or should have known its obligations under the FLSA and New Mexico law.

44. Defendant's' willfulness is further demonstrated by its decision to reclassify Estimators as non-exempt in January 2025 without compensating employees for past overtime worked and without fully correcting its overtime pay calculation practices.

45. Plaintiff and similarly situated Class Members seek recovery of unpaid overtime compensation, liquidated damages, and all other relief available under the FLSA and applicable New Mexico law.

**COLLECTIVE ACTION ALLEGATIONS**

46. Plaintiff incorporates by reference the foregoing allegations as if set forth herein.

47. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of himself and the FLSA Collectives as defined above.

48. Plaintiff desires to pursue their FLSA claim on behalf of all individuals who opt in to this action pursuant to 29 U.S.C. § 216(b).

49. Plaintiff and the FLSA Collectives are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to Crash Champions' common business and payroll practices as described herein, and, as a result of such practices, have not been paid overtime compensation due as described herein. Resolution of this action requires inquiry into common facts, including, *inter alia*, Crash Champions' common compensation and payroll practices.

50. These similarly situated employees are known to Crash Champions, readily identifiable, and can be easily located through Crash Champions' business records.

51. Crash Champions employs and has employed many members of the FLSA Collectives throughout the United States. These similarly situated current and former employees may be readily notified of this action through U.S. mail and/or other reasonable means, and allowed to opt in to this action, pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, interest, attorney's fees, and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

52. Plaintiff incorporates by reference the foregoing allegations as if set forth herein.

53. Plaintiff brings this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of himself and the New Mexico Classes defined above.

54. The members of the New Mexico Classes are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40 members of the New Mexico Classes.

55. Crash Champions has engaged in the same conduct towards Plaintiff and the other members of the New Mexico Classes.

56. The injuries and damages to the New Mexico Classes present questions of law and fact that are common to each class member within the New Mexico Classes, and that are common to the New Mexico Classes as a whole.

57. Plaintiff will fairly and adequately represent and protect the interests of the New Mexico Classes, and all of its potential class members because there is no conflict between the claims of Plaintiff and those of the New Mexico Classes, and Plaintiff's claims are typical of the claims of the New Mexico Classes.

58. Plaintiff's counsel are competent and experienced in litigating class actions and

other complex litigation matters, including wage and hour cases like this one.

59. Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the New Mexico Classes predominate over any questions affecting only individual Class members including, without limitation: (1) whether Crash Champions misclassified the New Mexico Misclassification Class as exempt; and (2) whether Crash Champions failed to pay the New Mexico Regular Rate Class the full amount of overtime compensation earned.

60. Plaintiff's claims are typical of the claims of the New Mexico Classes in the following ways, without limitation: (a) Plaintiff is a members of the New Mexico Classes; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New Mexico Classes; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the New Mexico Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the members of the New Mexico Classes; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the members of the New Mexico Classes.

61. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New Mexico Classes are readily identifiable from Crash Champions' own employment records. Prosecution of separate actions by individual

members of the New Mexico Classes would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Crash Champions.

62. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the members of the New Mexico Classes, while substantial, are not great enough to enable them to maintain separate suits against Crash Champions.

63. Without a class action, Crash Champions will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the New Mexico Classes. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiff and the FLSA Collectives)**

64. Plaintiff incorporates by reference the foregoing allegations as if set forth herein.

65. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

66. Crash Champions is subject to the wage requirements of the FLSA because Crash Champions is an "employer" under 29 U.S.C. § 203(d).

67. At all relevant times, Crash Champions was and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

68. During all relevant times, the members of FLSA Collectives, including Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. §

203(e).

69. Plaintiff and members of the FLSA Collectives are not exempt from the requirements of the FLSA.

70. Plaintiff and the FLSA Exempt Misclassification Collective regularly worked more than forty (40) hours in one or more workweeks and were misclassified as exempt from overtime, despite performing primarily non-managerial, production-based duties.

71. Defendant failed to pay Plaintiff and the FLSA Exempt Misclassification Collective overtime compensation at a rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207(a)(1).

72. Plaintiff and the FLSA Regular Rate Collective also regularly worked more than forty (40) hours in one or more workweeks and were paid overtime compensation calculated using an unlawfully low regular rate.

73. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e).

74. The Supreme Court has held that the term "regular rate" "obviously means the hourly rate actually paid the employee for the normal, non-overtime workweek." *Bay Ridge v. Operating Co. v. Aaron,* 334 U.S. 446, 460 (1948) (quoting *Walling v. Helmerich & Payne, Inc.,*323 U.S. 37, 40 (1944)).

75. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. *See* 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

76. Defendant failed to include all non-discretionary remuneration—including, but not limited to, sales-based commission bonuses, referral bonuses, retention or transition bonuses, and

other incentive compensation—in the regular rate of pay when calculating overtime, in violation of 29 U.S.C. § 207(e) and 29 C.F.R. Part 778.

77. The additional payments that Crash Champions provide are non-discretionary and should be included in Plaintiff and the FLSA Regular Rate Collective Members' regular rate.

78. The additional payments are paid as part of Plaintiff's and the FLSA Regular Rate Collective's usual wages.

79. The additional payments are promised to Plaintiff and the FLSA Regular Rate Collective in advance.

80. The additional payment amounts are predetermined and based on fixed formulas with defined metrics, causing Plaintiff and the FLSA Regular Rate Collective to form a reasonable and definite expectation that they receive the additional payments, and they did receive the additional payments.

81. Crash Champions denies overtime compensation on the additional payment portion of the hourly wages of the FLSA Regular Rate Collective Members.

82. Crash Champions also fails to create, keep, and preserve accurate records with respect to work performed by Plaintiff and the FLSA Collectives sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

83. Crash Champions' actions violated and continue to violate the FLSA and its implementing regulations.

84. Crash Champions knew or should have known that its classification and overtime-pay practices violated the FLSA yet continued those practices in reckless disregard of the law, rendering the violations willful within the meaning of 29 U.S.C. § 255(a).

85. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the FLSA Collectives suffered damages in the form of unpaid overtime wages.

86. Pursuant to 29 U.S.C. § 216(b), employers such as Crash Champions, who intentionally fail to pay employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the New Mexico Minimum Wage Act**
**(On Behalf of Plaintiff and the New Mexico Classes)**

87. Plaintiff incorporates by reference the foregoing allegations as if set forth herein.

88. The NMMWA requires payment of one and one-half times the employee's regular rate for each hour worked in excess of forty hours per workweek. N.M. STAT. ANN. § 50-4-22(D).

89. At all relevant times, Defendant has been and continues to be an "employer" within the meaning of the NMMWA. N.M. STAT. ANN. § 50-4-21(B).

90. During all relevant times, Plaintiff and members of the New Mexico Classes have been covered employees entitled to the protections under the NMMWA. N.M. STAT. ANN. § 50-4-21(C).

91. Defendant has been aware that, under N.M. STAT. ANN. § 50-4-22(D), it is obligated to pay all wages due to Plaintiff and members of the New Mexico Classes.

92. Defendant willfully failed to timely pay Plaintiff and the members of the New Mexico Classes all overtime compensation owed, including overtime owed due to misclassification and/or overtime underpayments caused by failure to include non-discretionary bonuses, commissions, and incentives in the regular rate.

93. Defendant's policy of unlawfully misclassifying the New Mexico Misclassification

Class Members and failing to pay the proper overtime wages to the New Mexico Regular Rate Class Members constitutes a continuing course of conduct within the meaning of N.M. STAT. ANN. § 50-4-32.

94. Pursuant to N.M. STAT. ANN. § 50-4-32, Plaintiff, individually and on behalf New Mexico Classes, seeks to recover unpaid wages for all overtime violations that occurred during their employment due to Defendant's continuing course of conduct in requiring New Mexico Class Members to work without proper overtime compensation.

95. Pursuant to N.M. STAT. ANN. § 50-4-26(C)-(E), employers, such as Defendant, who fail to pay an employee's wages in conformance with the NMMWA shall be liable to the employee for unpaid wages plus interest, an additional amount equal to twice the unpaid or underpaid wages, as well as court costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of the FLSA Collectives;

b. An order permitting this litigation to proceed as a class action pursuant to FED. R. CIV. P. 23 on behalf of the New Mexico Classes;

c. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collectives;

d. Backpay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

e. Liquidated damages to the fullest extent permitted under the law;

f. Punitive damages as permitted under the law;

g. Litigation costs, expenses and attorneys' fees to the fullest extent permitted

under the law; and

h. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff and the Classes are entitled to a jury.

Dated: May 12, 2026

Respectfully submitted,

*/s/ Camille Fundora Rodriguez*

Camille Fundora Rodriguez
Olivia Lanctot, *pro hac vice forthcoming*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4620
crodriguez@bergermontague.com
olanctot@bergermontague.com

Alexandra K. Piazza
**BERGER MONTAGUE PC**
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Telephone: (619) 489-0300
Facsimile: (215) 875-4620
apiazza@bergermontague.com